SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-----------------------------------------------------------------------X

MARIA SIEWERT and MICHAEL CATARUZOLO, As
Co-Executors of the Estate of THERESA CATARUZOLO,
Deceased, and MARIA SIEWERT and MICHAEL
CATARUZOLO, individually,

                                        Plaintiffs,

                    -against-

ATRIA SENIOR LIVING, INC. and ATRIA BAY SHORE,



-----------------------------------------------------------------------X

TO THE ABOVE-NAMED DEFENDANTS

|  |
|---|
| Index No. |
| Dated Purchased |

**SUMMONS**

Plaintiffs designate
NASSAU County as the place
of trial.

The basis of venue is plaintiff
Maria Siewert's residence.

Plaintiff, Maria Siewert's
residence is ███████████
████ Long Beach, NY 11562

        **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance on the Plaintiffs' Attorneys within 20 days after service of this summons, exclusive of the
day of service (or within 30 days after the service is complete if this summons is not personally
delivered to you within the State of New York); and in case of your failure to appear or answer,
judgment will be taken against you by default for the relief demanded in the complaint.

Dated:        New York, New York
              September 27, 2016              Yours, etc.,

                                             ARYE, LUSTIG & SASSOWER, P.C.
                                             Attorneys for Plaintiffs
                                             20 Vesey Street, 10th Floor
                                             New York, New York 10007
                                             (212) 732-4992

                                             BY: _____
                                                 JAY A. WECHSLER

**DEFENDANTS' ADDRESSES:**
**c/o Secretary of State**
**Atria Senior Living, Inc.**
401 South 4th Street, Suite 1900
Louisville, Kentucky 40202

300 East Market Street, Suite 100
Louisville, Kentucky 40202

**Atria Bay Shore**
53 Ocean Avenue
Bay Shore, New York 11706

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------------X
MARIA SIEWERT and MICHAEL CATARUZOLO as Co-
Executors of the Estate of THERESA CATARUZOLO,
Deceased, and MARIA SIEWERT and MICHAEL
CATARUZOLO, individually,                                      **VERIFIED COMPLAINT**

                           Plaintiffs,                        Index No.:

        -against-

ATRIA SENIOR LIVING, INC. and ATRIA BAY SHORE,

                           Defendants.
-------------------------------------------------------------------------X

        Plaintiffs, by their attorneys, ARYE, LUSTIG & SASSOWER, P.C., complaining of the

defendants, upon information and belief, respectfully allege as follows:

        1.      At all times hereinafter mentioned, plaintiff MARIA SIEWERT was and remains a

resident of the County of Nassau, State of New York.

        2.      At all times hereinafter mentioned, plaintiff MICHAEL CATARUZOLO was and

remains a resident of the County of Suffolk, State of New York.

        3.      That plaintiffs' decedent, THERESA CATARUZOLO ("CATARUZOLO" or "plaintiffs'

decedent") died on December 16, 2014.

        4.      The Will of THERESA CATARUZOLO, Deceased, has been admitted to probate and

pursuant to the Will, Plaintiffs MARIA SIEWERT and MICHAEL CATARUZOLO were named as

Co-Executors of the Estate of THERESA CATARUZOLO; and Plaintiffs MARIA SIEWERT and

MICHAEL CATARUZOLO were so appointed  by the Clerk of the Surrogate's Court, Nassau

County, State of New York, on April 22, 2016.

                                            1

## ARTICLE 16 ALLEGATIONS

5.      This action falls within one or more of the exceptions set forth in CPLR 1602, and as such defendants are jointly and severally liable pursuant to the exceptions set forth in Article 16 of the CPLR.

6.      Pursuant to CPLR Section 1602(2)(iv), defendants are jointly and severally liable for all of plaintiffs' damages, including but not limited to non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that defendants owed plaintiffs' decedent, a non-delegable duty of care.

7.      Pursuant to CPLR Section 1602(2)(iv), defendants are jointly and severally liable for all of plaintiffs' damages, including but not limited to non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendants are vicariously liable for the negligent acts and omissions of its servants, agents, affiliated physicians, surgeons and/or employees.

8.      Pursuant to CPLR Section 1602(7), defendants are jointly and severally liable for all of plaintiffs' damages, including but not limited to non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendants acted with reckless disregard for the safety of others, including plaintiffs' decedent.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR NEGLIGENCE

9.      That at all times hereinafter mentioned, defendant ATRIA SENIOR LIVING, INC. (hereinafter "ASL") was a domestic business corporation duly organized and existing under, and by virtue of, the laws of the State of New York and authorized to conduct business in the State of New York.

2

10. That at all times hereinafter mentioned, defendant ASL owned an assisted living community located at 53 Ocean Avenue, Bay Shore, County of Suffolk, State of New York.

11. That at all times hereinafter mentioned, defendant ASL operated an assisted living community located at the aforesaid location.

12. That at all times hereinafter mentioned, defendant ASL managed an assisted living community located at the aforesaid location.

13. That at all times hereinafter mentioned, Defendant ASL maintained an assisted living community located at the aforesaid location.

14. That at all times hereinafter mentioned, defendant ASL supervised an assisted living community located at the aforesaid location.

15. That at all times hereinafter mentioned, defendant ASL controlled an assisted living community located at the aforesaid location.

16. That at all times hereinafter mentioned, defendant ATRIA BAY SHORE ( hereinafter "ABS") was an assisted living community located at the aforesaid location and owned by defendant ASL.

17. That at all times hereinafter mentioned, defendant ABS owned an assisted living community located at the aforesaid location.

18. That at all times hereinafter mentioned, defendant ABS operated an assisted living community located at the aforesaid location.

19. That at all times hereinafter mentioned, defendant ABS managed an assisted living community located at the aforesaid location.

20. That at all times hereinafter mentioned, defendant ABS maintained an assisted living

3

community located at the aforesaid location.

21.     That at all times hereinafter mentioned, Defendant ABS supervised an assisted living community located at the aforesaid location.

22.     That at all times hereinafter mentioned, Defendant ABS controlled an assisted living community located at the aforesaid location.

23.     That upon information and belief, at all times hereinafter mentioned, defendant ABS was an assisted living community operated by defendant ASL.

24.     That upon information and belief, at all times hereinafter mentioned, defendant ABS was an assisted living community managed defendant ASL.

25.     That upon information and belief, at all times hereinafter mentioned, defendant ABS was an assisted living community maintained by defendant ASL.

26.     That upon information and belief, at all times hereinafter mentioned, defendant ABS was an assisted living community supervised by defendant ASL.

27.     That upon information and belief, at all times hereinafter mentioned, defendant ABS was an assisted living community controlled by defendant ASL.

28.     That at all times mentioned herein, defendant ASL owned the premises and appurtenances and fixtures thereto, located at the aforesaid location.

29.     That at all times mentioned herein, defendant ASL was and still remains engaged in the ownership of an assisted living facility located at the aforesaid location.

30.     That at all times mentioned herein, defendant ASL was and still remains engaged in the operation of an assisted living facility located at the aforesaid location.

31.     That at all times mentioned herein, defendant ASL was and still remains engaged in the

4

management of an assisted living facility located at the aforesaid location.

32.     That at all times mentioned herein, defendant ASL was and still remains engaged in the maintenance of an assisted living facility located at the aforesaid location.

33.     That at all times mentioned herein, defendant ASL was and still remains engaged in the supervision of an assisted living facility located at the aforesaid location.

34.     That at all times mentioned herein, defendant ASL was and still remains engaged in the control of an assisted living facility located at the aforesaid location.

35.     That at all times mentioned herein, defendant ABS owned the premises and appurtenances and fixtures thereto, located at the aforesaid location.

36.     That at all times mentioned herein, defendant ABS was and still remains  engaged in the ownership of an assisted living facility located at the aforesaid location.

37.     That at all times mentioned herein, defendant ABS was and still remains engaged in the operation of an assisted living facility located at the aforesaid location.

38.     That at all times mentioned herein, defendant ABS was and still remains engaged in the management of an assisted living facility located at the aforesaid location.

39.     That at all times mentioned herein, defendant ABS was and still remains engaged in the maintenance of an assisted living facility located at the aforesaid location.

40.     That at all times mentioned herein, defendant ABS was and still remains engaged in the supervision of an assisted living facility located at the aforesaid location.

41.     That at all times mentioned herein, defendant ABS was and still remains engaged in the control of an assisted living facility located at the aforesaid location.

42.     That at all times mentioned herein, defendant ASL claimed to provide for the proper

5

care and safety of the residents therein, including plaintiffs' decedent, and to provide personnel, including doctors, nurses, attendants, assistants and others for the proper care, safety and good treatment of its patients and residents and held itself out to the public as furnishing treatment facilities where patients and residents, including plaintiffs' decedent, could be provided with proper care and safety.

43.     That at all times mentioned herein, defendant ABS claimed to provide for the proper care and safety of the residents therein, including plaintiffs' decedent, and to provide personnel, including doctors, nurses, attendants, assistants and others for the proper care, safety and good treatment of its patients and residents and held itself out to the public as furnishing treatment facilities where patients and residents, including plaintiffs' decedent, could be provided with proper care and safety.

44.     That at all times mentioned herein, defendant ASL represented that it was competent to perform and render all the resident care, medical care, treatment, services and advice required by the plaintiffs' decedent.

45.     That at all times mentioned herein, defendant ABS represented that it was competent to perform and render all the resident care, medical care, treatment, services and advice required by the plaintiffs' decedent.

46.     That at all times mentioned herein, defendant ASL was a proprietary business engaged in the not-for-profit operation of an assisted living facility that claimed to provide proper care and safety to patients such as plaintiffs' decedent.

47.     That at all times mentioned herein, defendant ABS was a proprietary business engaged

6

in the not-for-profit operation of an assisted living facility that claimed to provide proper care and safety to patients such as plaintiffs' decedent.

48.    That at all times mentioned herein, defendant ASL held itself out as a nursing home.

49.    That at all times mentioned herein, defendant ABS held itself out as a nursing home.

50.    That at all times mentioned herein, defendant ASL was operating a nursing home and/or assisted living facility in the State of New York, and accordingly:

      a.    Defendant ASL is a nursing home and/or assisted living facility/residential health care facility within the meaning of Article 28 of the Public Health Law and at all times relevant, defendant ASL was under a duty to comply with all the duties set forth under that chapter. The New York Codes Rules and Regulations (NYCRR), 10 NYCRR 415.1 (b)(4) require that nursing homes comply with all pertinent federal, state and local laws, regulations, codes, standards and principles. In New York State, nursing homes are required to provide care and services in a manner and quality consistent with generally accepted standards of practice pursuant to 10 NYCRR 415.1(b)(1).

      b.    The defendant ASL was and is a participant in Medicare and Medicaid programs.

51.    At all times mentioned herein, defendant ABS was operating a nursing home and/or assisted living facility in the State of New York, and accordingly:

      a.    Defendant ABS is a nursing home and/or assisted living facility/residential health care facility within the meaning of Article 28 of the Public Health Law and at all times relevant, defendant ABS was under a duty to comply with all

7

the duties set forth under that chapter.  The New York Codes Rules and Regulations (NYCRR), 10 NYCRR 415.1 (b)(4) require that nursing homes comply with all pertinent federal, state and local laws, regulations, codes, standards and principles.  In New York State, nursing homes are required to provide care and services in a manner and quality consistent with generally accepted standards of practice pursuant to 10 NYCRR 415.1(b)(1).

    b.    The defendant ABS was and is a participant in Medicare and Medicaid programs.

52.    To participate in Medicare and Medicaid programs, nursing homes must be in compliance with the federal requirements for long-term care as prescribed in the U.S. Code of Federal Regulations, 42 C.F.R. §483.

53.    Under the Code of Federal Regulations, a nursing home: must have sufficient nursing staff to provide nursing and related services to attain and maintain the highest practicable physical, mental and psychosocial well being of each resident (42 C.F.R. §483.30); provide, if a resident is unable to carry out activities of daily living, the necessary services to maintain good nutrition, grooming and personal and oral hygiene (42 C.F.R. §483.25); ensure that the resident's environment remains free of accident hazards (42 C.F.R. §483.25(h)(1)); ensure that each resident receives adequate supervision and assistance to prevent accidents (42 C.F.R. §483.25(h)(2)); ensure that a resident maintains acceptable parameters of nutritional status such as body weight and protein levels (42 C.F.R. §483.25); provide an appropriate assessment of each resident entering a certified home and the development and implementation of an appropriate care plan so that each resident is allowed to attain and maintain the highest practicable mental, physical and psychosocial well-being (42 C.F.R.

8

§483.1); ensure that the facility protects the resident from unnecessary falls and accidents (42 C.F.R. §483.25(h)); conduct an initial assessment to determine the resident's risk of falling and develop a care plan that is tailored to address the resident's needs (42 C.F.R. §483.20); report any resident falls to the attending physician and also to the responsible party for the resident and to monitor the resident's complications from the fall; the facility further has an obligation to investigate the cause of all falls and develop a plan to protect the resident from future falls (42 C.F.R. §483.10(10)).

54.     Defendant ALS had the duty to properly complete a comprehensive minimum data set ("MDS") assessment no later than by day 14 after admission.

55.     Defendant ABS had the duty to properly complete a comprehensive MDS assessment no later than by day 14 after admission.

56.     Defendant ASL had the duty to complete a comprehensive plan of care by day 21 after admission.

57.     Defendant ABS had the duty to complete a comprehensive plan of care by day 21 after admission.

58.     That at all times mentioned herein, defendant ASL was operating a nursing home and/or assisted living facility/residential health care facility in the State of New York, and accordingly, and at all times mentioned herein, defendant had a duty to comply with New York State Public Health Law Article 28; at all times mentioned herein, defendant was subject to New York State Public Health Law §2801(d); at all times mentioned herein, defendant was under a duty to comply with Part 10, §415 of NYCRR; at all times mentioned herein, defendant was under a duty to comply with 42 C.F.R. Part 483; at all times mentioned herein, defendant was under a duty to comply with 42 U.S.C. §1396-r (1990) *et seq.*, as amended by the Omnibus Reconciliation Act ("OBRA") of 1987.

9

59.     That at all times mentioned herein, defendant ABS was operating a nursing home and/or assisted living facility/residential health care facility in the State of New York, and accordingly, and at all times mentioned herein, defendant had a duty to comply with New York State Public Health Law Article 28; at all times mentioned herein, defendant was subject to New York State Public Health Law §2801(d); at all times mentioned herein, defendant was under a duty to comply with Part 10, §415 of NYCRR; at all times mentioned herein, defendant was under a duty to comply with 42 C.F.R. Part 483; at all times mentioned herein, defendant was under a duty to comply with 42 U.S.C. §1396-r (1990) *et seq.,* as amended by OBRA of 1987.

60.     That at all times mentioned herein, defendant ASL, through its officers, employees, agents and staff had the following duty under OBRA 42 C.F.R. §483.25 and New York State Rules and Regulations: each resident must receive, and the facility must provide, the necessary care and services to attain or maintain the highest practicable physical, mental and psychological well being, in accordance with the comprehensive assessment and care plan.

61.     That st all times mentioned herein, defendant ABS, through its officers, employees, agents and staff had the following duty under OBRA 42 C.F.R. §483.25 and New York State Rules and Regulations: each resident must receive, and the facility must provide, the necessary care and services to attain or maintain the highest practicable physical, mental and psychological well being, in accordance with the comprehensive assessment and care plan.

62.     That at all times mentioned herein, defendant ASL  was subject to the requirements of the New York State Law and Regulations.

63.     That at all times mentioned herein, defendant ABS was subject to the requirements of the New York State Law and Regulations.

10

64.    That at all times mentioned herein, defendants, and each of them, were subject to the licensing and regulatory rules of the United States Government, New York State, County of Suffolk.

65.    That at all times mentioned herein, defendants, and each of them, through their officers, employees, agents and staff had a duty to exercise reasonable care, diligence and skill of a nursing home with the same degree of care and skill of nursing homes with the expertise which defendants were to have and which was advertised to the public.

66.    That at all times mentioned herein, plaintiffs' decedent was a resident of ABS under the care and management of the defendants, and each of them.

67.    That at all times mentioned herein, defendant ASL stood in such a relationship with plaintiffs' decedent as to make it liable for the acts and omissions of its agents, doctors, nurses, staff and employees.

68.    That at all times mentioned herein, defendant ABS stood in such a relationship with plaintiffs' decedent as to make it liable for the acts and omissions of its agents, doctors, nurses, staff and employees.

69.    That at all times mentioned herein, defendants were subject to the requirements of the New York State Law and Regulations.

70.    That at all times mentioned herein, defendants, and each of them, were subject to the licensing and regulatory rules of the United States Government, New York State, County of Suffolk.

71.    That at all times mentioned herein, defendants, and each of them, through their officers, employees, agents and staff had a duty to exercise reasonable care, diligence and skill of a nursing home with the same degree of care and skill of nursing homes with the expertise which defendants, and each of them, were to have and which were advertised to the public.

11

72.     From on or about August 21, 2013 through December 16, 2014, defendant ASL agreed and undertook to care for and treat plaintiffs' decedent.

73.     From on or about August 21, 2013 through December 16, 2014, defendant ABS agreed and undertook to care for and treat plaintiffs' decedent.

74.     From on or about August 21, 2013 through December 16, 2014, defendants, and each of them, agreed and undertook to care for and treat plaintiffs' decedent.

75.     From on or about August 21, 2013 through December 16, 2014, plaintiffs' decedent sought the professional care of defendants, and each of them, for certain medical complaints, and defendants, their agents, servants and employees took on the responsibility of rendering medical and nursing care, residential health care, diagnosis, treatment and services to her.

76.     Defendants, and each of them, departed from generally accepted standards of medical practice and, as a result of the departures of defendants, and each of them, and their carelessness, recklessness, and negligence, plaintiffs' decedent incurred great pain and suffering, as well as emotional, mental, psychological, and physical injuries which ultimately resulted in her death on December 16, 2014.

77.     At all times mentioned herein, plaintiffs' decedent was unsteady on her feet, was at risk for falls, and required constant supervision when ambulatory, all of which defendants, their agents, servants and employees knew or should have known in the exercise of due care.

78.     During the course of plaintiffs' decedent's admission to defendants' facility, the nursing care plan called for or should have called for bed rails up and frequent safety checks.

12

79.     At all times mentioned herein, plaintiffs' decedent was allowed to leave her bed and use the bathroom on her own and walk about without restraint or supervision, although defendants, and each of them, knew that her gait was unsteady, and plaintiffs' decedent was improperly nourished.

80.     At all times mentioned herein plaintiffs' decedent was to have been accompanied by a specified number of employees of defendants, all of which defendants, and each of them, knew or should have known with the exercise of due care.

81.     As a result of the defendants' negligence, plaintiffs' decedent fell numerous times, was admitted to Southside Hospital for treatment of various physical injuries, including head injury, multiple bruises, contusions and lacerations to the head and face, and a subdural hematoma.

82.     As a result of defendants' carelessness, recklessness, and negligence, plaintiffs' decedent suffered pain, suffering, emotional, mental, psychological, and physical injuries, which ultimately resulted in her death on December 16, 2014.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR NEGLIGENCE AND MEDICAL MALPRACTICE

83.     Plaintiffs repeat and reallege each and every allegation set forth in this complaint with the same force and effect as though set forth herein at length.

84.     The above medical and nursing care, diagnoses, treatment and services rendered to plaintiffs' decedent were rendered carelessly, unskillfully, negligently, and not in accordance with accepted standards of medical and nursing practices, diagnosis and treatment.

85.     The injuries suffered by the plaintiffs' decedent were caused by the lack of reasonable care exercised by the defendants, and each of them, in that the above mentioned occurrences, and the results thereof, were caused by the negligence of the defendants, and each of them, and/or said

defendants' servants, agents, employees and/or licensees in the ownership, operation, management, supervision, maintenance and control of the aforesaid premises and this patient, in the negligent care and nursing and medical practice provided to this patient and in the failure to properly care for this patient.

86. The injuries suffered by the plaintiffs' decedent were caused by the lack of reasonable care exercised by the defendants, and each of them, in that the above mentioned occurrence, and the results thereof, were caused by the negligence of the defendants and/or said defendants' servants, agents, employees and/or licensees in the ownership, operation, management, supervision, maintenance and control of the aforesaid premises and this patient, in the negligent care and nursing and medical practice provided to this patient and in the failure to properly care for this patient.

87. The injuries suffered by the plaintiffs' decedent were caused by the lack of reasonable care exercised by the defendants, and each of them, in that the above mentioned occurrence, and the results thereof, were caused by the negligence and departures from good and accepted standards of practice by the defendants and/or said defendants' servants, agents, employees and/or licensees in the control of this patient, in the negligent care and medical practice provided to this patient and in the failure to properly care for this patient.

88. The injuries sustained by the plaintiffs' decedent caused her physical injury, great pain, agony, and conscious pain and suffering, and required medical and hospital treatment for which she incurred expenses, all of which caused, precipitated, and contributed to her death on December 16, 2014.

89. No negligence on the part of plaintiffs' decedent or plaintiffs contributed to the occurrence or injuries.

14

90.     The conduct described herein involved willful malfeasance, gross neglect, negligence, and gross abuse on the part of the defendants.

91.     As a result of the foregoing, plaintiffs MARIA SIEWERT and MICHAEL CATARUZOLO bring this action as Co-Executors of the Estate of THERESA CATARUZOLO for sustained damages in an amount that exceeds the jurisdictional limits of all lower courts, for which general and special damages, compensatory damages and punitive damages they now sue.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR NEGLIGENCE PER SE

92.     Plaintiffs repeat and reallege each and every allegation set forth in this complaint with the same force and effect as though set forth herein at length.

93.     During the period of plaintiffs-decedents' residency in the defendants' facility, the defendants, through their officers, employees, agents and staff, were negligent in the operation of the facility and particularly in the care rendered to plaintiff in violation of Section 483.25 of the OBRA regulations as well as other Federal, New York State and Suffolk County regulatory rules.

94.     As a consequence of the defendants' failure to adhere to the duties set forth in OBRA Section 483.25 as well as the licensing and regulatory rules of the State of New York and Suffolk County, the defendants are liable in negligence per se.

95.     The aforesaid legislative and administrative regulations are designed to prevent injury to the class of persons to which plaintiffs-decedent belongs.

96.     The aforesaid violations by the defendants were a proximate cause of the plaintiffs'-decedent's injuries and death.

15

97.     By reason of the foregoing, plaintiffs were damaged in a sum which exceeds the jurisdictional limits of all lower courts.

98.     The conduct described herein involved gross abuse, willful malfeasance, and gross neglect on the part of the defendants.

99.     As a result of the foregoing, plaintiffs MARIA SIEWERT and MICHAEL CATARUZOLO bring this action as Co-Executors of the Estate of THERESA CATARUZOLO for sustained damages in an amount that exceeds the jurisdictional limits of all lower courts, for which general and special damages, compensatory damages and punitive damages they now sue.

## AS AND FOR A FOURTH CAUSE OF ACTION
## PURSUANT TO PUBLIC HEALTH LAW SECTION 2801-d

100.     Plaintiffs repeat and reallege each and every allegation set forth in this complaint with the same force and effect as though set forth herein at length.

101.     During the period of plaintiffs' decedent's residency in the defendants' facility, the defendants, and each of them, through their officers, employees, agents and staff, failed in the operation of the facility and particularly in the care rendered to plaintiffs' decedent in violation of Public Health Law Section 2801-d.

102.     As a consequence of the defendants', failure to adhere to the duties set forth in Public Health Law Section 2801-d, plaintiffs' decedent suffered physical injury and conscious pain and suffering, and required medical and hospital treatment for which she incurred expenses, all of which caused, precipitated, and contributed to her death on December 16, 2014.

103.     By virtue thereof, plaintiffs demand as damages attorney's fees based upon the reasonable value of legal services rendered pursuant to Public Health Law Section 2801-d.

16

104.    By virtue thereof, plaintiffs additionally demand as damages *per diem* damages pursuant to Public Health Law Section 2801-d.

105.    The conduct described herein involved gross abuse, willful malfeasance, and gross neglect on the part of the defendants, and each of them.

106.    As a result of the foregoing, plaintiffs MARIA SIEWERT and MICHAEL CATARUZOLO bring this action as Co-Executors of the Estate of THERESA CATARUZOLO for sustained damages in an amount that exceeds the jurisdictional limits of all lower courts, for which general and special damages, compensatory damages and punitive damages they now sue.


### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST DEFENDANTS FOR BREACH OF IMPLIED WARRANTY

107.    Plaintiffs repeat and reallege each and every allegation set forth in this complaint with the same force and effect as though set forth herein at length.

108.    As a nursing home and/or assisted living facility, defendants, and each of them, impliedly warranted their services and held themselves out to the public as being able, competent, and/or qualified to perform, render and/or to provide all of the professional geriatric care, treatments, procedures, rehabilitation, and/or services rendered and provided to, and/or required by plaintiffs' decedent.

109.    As a nursing home and/or assisted living facility, defendants impliedly warranted that they would:

      a.    Provide sufficient nursing staff to care for CATARUZOLO;

      b.    Provide adequate nursing staff to care for CATARUZOLO;

      c.    Ensure that CATARUZOLO maintained proper nutrition, body weight, and health;

17

      d.      Provide care that would enable CATARUZOLO to maintain the highest practicable physical, mental, and psychosocial level of well being;

      e.      Provide care that would prevent CATARUZOLO from falling;

      f.      Follow standards set forth by Federal, State, and local rules, regulations or other laws.

110. The defendants, and each of them, were not able, competent, or qualified to perform, render or provide all of the professional geriatric care, treatments, procedures, or services rendered to, and/or provided to, and/or required by CATARUZOLO.

111. Defendants, and each of them, breached an implied warranty of good and appropriate care for CATARUZOLO in that:

      a.      Defendants, and each of them, did not provide adequate or sufficient nursing staff to care for CATARUZOLO;

      b.      Defendants' actions or inactions caused CATARUZOLO's health to deteriorate, caused her to suffer physical injuries, and ultimately pass away;

      c.      Defendants, and each of them, did not provide care that would enable CATARUZOLO to maintain the highest practicable physical, mental, and psychosocial level of well being;

      d.      Defendants, and each of them, did not ensure that CATARUZOLO maintained proper nutrition, body weight, and health;

      e.      Defendants, and each of them, failed to adequately attend to and supervise CATARUZOLO;

      f.      Defendants, and each of them, failed to promulgate, enforce, abide by, or follow appropriate rules, regulations, guidelines, procedures, policies, or protocols with respect to the standards of care for residents such as CATARUZOLO;

      g.      Defendants, and each of them, failed to comply with State and Federal regulations or rules governing nursing homes and/or assisted living facilities and the standard of care to be applied to nursing homes and/or assisted living facilities residents;

      h.      Plaintiffs decedent and plaintiffs could not have known that the defendants, and each of them, could not care for CATARUZOLO, that the defendants, and each

18

of them, would not be able to provide or fulfill the services they impliedly warranted.

i.

112.    As a direct and proximate result of the breach of implied warranty, plaintiffs' decedent suffered serious physical injury and harm and death, as alleged herein, which is incorporated by reference as though fully set forth herein.

113.    As a result of the foregoing, plaintiffs MARIA SIEWERT and MICHAEL CATARUZOLO bring this action as Co-Executors of the Estate of THERESA CATARUZOLO for sustained damages in an amount that exceeds the jurisdictional limits of all lower courts, for which general and special damages, compensatory damages and punitive damages they now sue.

## AS AND FOR A SIXTH CAUSE OF ACTION
## FOR BREACH OF CONTRACT

114.    Plaintiffs repeat and reallege each and every allegation set forth in this complaint with the same force and effect as though set forth herein at length.

115.    Prior to plaintiffs' decedent's admission to defendants' facility, defendants, and each of them, represented to the plaintiffs and plaintiffs' decedent that defendants, and each of them, could provide good nursing care for CATARUZOLO.

116.    Based upon the representations of the defendants, and each of them, defendants and plaintiffs and plaintiffs' decedent entered into an agreement whereby defendants, and each of them, were to provide CATARUZOLO with good nursing and medical care and treatment.

117.    Pursuant to the agreement, the defendants, and each of them, had a contractual responsibility to provide plaintiffs' decedent with her nursing home/assisted living facility resident's rights as set forth in her contract with the facility, which responsibility included, but was not limited to, the following:

19

a.      Providing adequate and appropriate health care and protective and support services;

b.      Preventing mental and physical abuse of CATARUZOLO;

c.      Complying with regulations for the operation of nursing facilities promulgated by the  Department of Health and Human Services;

d.      Developing and implementing a preliminary and comprehensive resident assessment and preliminary and a comprehensive resident care plan, with ongoing evaluating and update;

e.      Providing prompt notification to the family and physician of significant changes in plaintiff's decedent's health status;

f.      Providing prompt documentation of accidents or unusual incidents;

g.      Protecting CATARUZOLO from foreseeable harm, including, but not limited to, the development of fatigue, weakness, joint pain, nausea, falls, vomiting, low blood sugar, dehydration, loss of appetite, shortness of breath, bleeding and dizziness;

h.      Maintaining medical records which contain sufficient information to justify the diagnosis and treatment and to document the results, including at a minimum, documented evidence of assessments of the needs of the resident, of establishment of appropriate plans of care and treatment, and of the care and services provided;

I.      Properly notifying the family and physician of CATARUZOLO of significant changes in her health status;

j.      Protecting CATARUZOLO from foreseeable harm from including, but not limited to, the development of fatigue, weakness, falls, bedsores, dehydration, and loss of appetite;

k.      Properly supervising staff;

l.      Properly training staff;

m.      Properly retaining staff;

n.      Protecting the dignity of CATARUZOLO;

o.      Protecting the privacy of CATARUZOLO;

20

p.  Providing adequate and appropriate health care to CATARUZOLO;

q.  Providing a proper documentation of care for CATARUZOLO;

r.  Giving adequate fluids to CATARUZOLO;

s.  Giving CATARUZOLO proper medication;

t.  Developing, implementing, and updating an adequate and appropriate resident care plan to meet the needs of CATARUZOLO;

u.  Maintaining medical records which contain sufficient information to justify the diagnosis and treatment and to document the results, including at a minimum documented evidence of assessment of the needs of the resident, of establishment of appropriate plans of care and treatment, and of the care and services provided;

v.  Appropriately monitoring CATARUZOLO and recognizing significant signs and symptoms of change in her health condition;

118.   Defendants' responsibilities to CATARUZOLO as outlined in the contract are non-delegable and such that defendants, and each of them, had direct liability for violations, deprivations or infringements by any person or entity under defendants' control, direct or indirect, including its employees, agents, consultants and independent contractors, whether in-house or outside entities, individuals, agencies or pools, or caused by defendants' policies, whether written or unwritten, or common practices.

119.   In addition to defendants' direct responsibility under contract, defendants, and each of them, had vicarious liability for the acts or omissions of all persons or entities under defendants' control, either direct or indirect, including its employees, agents, consultants and independent contractors, whether in-house or outside entities, individuals, agencies or pools causing any deprivation or infringements of plaintiffs'- decedent's rights as set forth in the contract.

120.   The duty alleged includes, but is not limited to, proper training and supervision; proper hiring background and referral checks; and proper retaining and dismissing of employees, agents,

21

consultants and independent contractors.

121.   Notwithstanding the responsibility of defendants to provide plaintiffs' decedent her contractual nursing home/assisted living facility residents' rights and proper nursing care, plaintiffs' decedent was deprived of such contractual rights by the acts or omissions of defendants, and each of them, which include, but are not limited to, the following:

a.   Providing adequate and appropriate health care and protective and support services;

b.   Preventing mental and physical abuse of CATARUZOLO;

c.   Complying with regulations for the operation of nursing facilities promulgated by the Department of Health and Human Services;

d.   Developing and implementing a preliminary and comprehensive resident assessment and a preliminary and comprehensive resident care plan, with ongoing evaluation and update;

e.   Providing prompt notification to the family and physician of significant changes in her health status;

f.   Providing prompt documentation of accidents or unusual incidents involving falls;

g.   Protecting CATARUZOLO from foreseeable harm, including, but not limited to, the development of fatigue, weakness, joint plan, nausea, vomiting, low blood sugar, dehydration, loss of appetite, shortness of breath, internal bleeding and dizziness;

h.   Maintaining medical records which contain sufficient information to justify the diagnosis and treatment and to document the results, including at a minimum, documented evidence of assessments of the needs of the resident, of establishment of appropriate plans of care and treatment, and of the care and services provided.

I.   Properly notifying the family and physician of CATARUZOLO of significant changes in her health status;

j.   Protecting CATARUZOLO from foreseeable harm from including, but not limited to, the development of fatigue, weakness, falls, bedsores, dehydration, and loss of appetite;

k.   Properly supervising staff;

l.   Properly training staff;

m.   Properly retaining of staff;

n.   Protecting the dignity of CATARUZOLO;

22

o.      Protecting the privacy of CATARUZOLO;

p.      Providing adequate and appropriate health care to CATARUZOLO;

q.      Providing proper documentation of care for CATARUZOLO;

r.      Giving adequate fluids to CATARUZOLO;

s.      Giving CATARUZOLO proper medication;

t.      Developing, implementing, and updating an adequate and appropriate resident care plan to meet the needs of CATARUZOLO;

u.      Maintaining medical records which contain sufficient information to justify the diagnosis and treatment and to document the results, including, at a minimum, documented evidence of assessment of the needs of the resident, of establishment of appropriate plans of care and treatment, and of the care and services provided; and

v.      Appropriately monitoring CATARUZOLO and recognize significant signs and symptoms of change in her health condition.

122.    As a result of defendants' breach of contract, CATARUZOLO suffered permanent injuries, death and damages.

123.    As a result of the foregoing, plaintiffs MARIA SIEWERT and MICHAEL CATARUZOLO bring this action as Co-Executors of the Estate of THERESA CATARUZOLO for sustained damages in an amount that exceeds the jurisdictional limits of all lower courts, for which general and special damages, compensatory damages and punitive damages they now sue.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## FOR WRONGFUL DEATH

124.    Plaintiffs repeat and reallege each and every allegation set forth in this complaint with the same force and effect as though set forth herein at length.

125.    By reason of the above, plaintiffs' decedent sustained great pain, agony, injury, suffering, disability, hospitalization, mental anguish, emotional distress, and death.

23

126.    By reason of the above, plaintiffs MARIA SIEWERT and MICHAEL CATARUZOLO, as Co-Executors of the Estate of THERESA CATARUZOLO, bring this action for the wrongful death of plaintiffs'-decedent on behalf of her surviving distributees, including plaintiffs, who have suffered pecuniary injuries and loss, and have been deprived of said decedent's support, comfort, services, companionship, guidance, advice, love and affection, all to their damage, both general and special, in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

127.    By reason of the above, plaintiffs bring this action for plaintiff damages, both general and special, in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**WHEREFORE**, plaintiffs demand judgment against the defendants, and each of them, on the First Cause of Action, in an amount that exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the trial of this action; on the Second Cause of Action, in an amount that exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in  an amount to be determined upon the trial of this action; on the Third Cause of Action, in an amount that exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the trial of this action; on the Fourth Cause of Action, in an amount the exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the trial of this action; on the Fifth Cause of Action, in an amount the exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the trial of this action; on

24

the Sixth Cause of Action, in an amount the exceeds the monetary jurisdictional limits of any and all

lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the

trial of this action; on the Seventh Cause of Action, in an amount the exceeds the monetary jurisdictional

limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be

determined upon the trial of this action; and punitive damages, with all of the foregoing together with

interest, costs and disbursements of this action.

Dated: New York, New York
      September 27, 2016

                                   Yours, etc.
                                   ARYE, LUSTIG & SASSOWER, P.C.
                                   Attorneys for Plaintiffs
                                   20 Vesey Street, 10th Floor
                                   New York, New York 10007
                                   Phone No. (212) 732-4992

                   By:_____

                                   JAY A. WECHSLER, Esq.

22

**ATTORNEY'S VERIFICATION BY AFFIRMATION**

JAY A. WECHSLER, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am associated with ARYE, LUSTIG & SASSOWER, P.C. , attorneys of record for plaintiffs. I have read the annexed VERIFIED COMPLAINT and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true.  My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

The reason I make the foregoing affirmation instead of the plaintiffs is because plaintiffs reside outside of the county wherein your affirmant maintains offices.

Dated:  New York, New York
       September 27, 2016

                                             JAY A. WECHSLER

23

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-------------------------------------------------------------------------X

MARIA SIEWERT and MICHAEL CATARUZOLO, As
Co-Executors of the Estate of THERESA CATARUZOLO,
Deceased, and MARIA SIEWERT and MICHAEL
CATARUZOLO, individually,

                     Plaintiffs,

    -against-

ATRIA SENIOR LIVING, INC. and ATRIA BAY SHORE,

                     Defendants.

-------------------------------------------------------------------------X

Index No.:

**CERTIFICATE OF
MERIT**

      JAY A. WECHSLER, the undersigned, an attorney admitted to practice in the Courts of New

York State, states that he is an associate with Arye, Lustig & Sassower, P.C., attorneys for the plaintiffs

in the within action. I have reviewed the facts of this case and have consulted with at least one physician

who is licensed to practice in this State or any other state and who I reasonably believe is knowledgeable

in the relevant issues involved in this action, and I have concluded on the basis of such review and

consultation that there is a reasonable basis for the commencement of this action.

Dated: New York, New York
       September 27, 2016

                             _____
                             JAY A. WECHSLER, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

MARIA SIEWERT and MICHAEL CATARUZOLO as
Co-Executors of the Estate of THERESA
CATARUZOLO, Deceased, and MARIA SIEWERT
and MICHAEL CATARUZOLO, individually

Plaintiffs,

- against -

ATRIA SENIOR LIVING, INC. and ATRIA BAY
SHORE

Defendants

SUMMONS, VERIFIED COMPLAINT AND CERTIFICATE OF
MERIT

ARYE, LUSTIG & SASSOWER, P.C.
Attorney(s) for Plaintiff(s)

20 VESEY STREET
NEW YORK, N.Y. 10007
(212) 732-4992

To:

Attorney(s) for

Service of a copy of the within                    is hereby admitted

Dated,

Attorney(s) for

---

NOTICE

the within is a certified true copy of a
entered in the office of
of the within named Court on

on order of which the within is a true copy
be presented for settlement to the
one of
judge    of the within named Court, at
on
at

NYCRR 130-1.1-a, the undersigned, an attorney
certify the courts of New York State, certifies that...

LUSTIG & SASSOWER, P.C.

20 VESEY STREET
NEW YORK, N.Y. 10007

LUSTIG & SASSOWER, P.C.

20 VESEY STREET
NEW YORK, N.Y. 10007

for